IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| TINA VICTORIA TAYLOR, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | NO. 2:20-cv-00611-SRW |
| | ) | |
| KILOLO KIJAKAZI,[1] | ) | |
| Acting Commissioner of | ) | |
| Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

## I.    INTRODUCTION

Plaintiff Tina Victoria Taylor commenced this action on August 20, 2020, pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), seeking judicial review of a final adverse decision of the Commissioner of Social Security ("the Commissioner") denying her application for supplemental security income ("SSI") benefits under Title XVI of the Social Security Act ("the Act"). *See* Doc. 1. Plaintiff filed her application on October 23, 2018, initially alleging that she became disabled on November 14, 2017, but later amendng the onset date of disability to May 15, 2018, and then again to October 23, 2018. (Tr. 23, 78-79, 262-63, 403-13, 426, 520).[2] Plaintiff's application was denied at the initial administrative level. (Tr. 23, 362). Plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ"), at which she appeared with an attorney. (Tr. 23, 67-102, 370-72). On November 27, 2019, the ALJ issued an unfavorable decision. (Tr. 23-38).

---

[1] Kilolo Kijakazi became Acting Commissioner for the Social Security Administration on July 9, 2021, and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d).

[2] References to the actual transcript pages are denoted by the abbreviation "Tr."

Plaintiff appealed that decision, and the Appeals Council denied Plaintiff's request for review on July 24, 2020. (Tr. 1-6). The ALJ's decision therefore became the final decision of the Commissioner. *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).

In the instant appeal, Plaintiff asks the court to reverse the Commissioner's decision and remand this cause to the Commissioner for a new hearing and further consideration under sentence four of 42 U.S.C. § 405(g). *See* Doc. 1; Doc. 12, at 14. The case is ripe for review pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Under 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, the parties have consented to the conduct of all proceedings and entry of a final judgment by the undersigned United States Magistrate Judge. *See* Docs. 9, 10.  Based on its review of the parties' submissions, the relevant law, and the record as a whole, the court concludes that the Commissioner's decision is due to be AFFIRMED.

## II.    STANDARD OF REVIEW AND REGULATORY FRAMEWORK

The court's review of the Commissioner's decision is a limited one. This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla," but less than a preponderance, "and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) ("Even if the evidence preponderates against the Commissioner's findings, [a reviewing court] must affirm if the decision reached is supported by substantial evidence") (citations omitted). The court will reverse the Commissioner's decision if it is convinced that the decision was not supported by substantial evidence or that the proper legal standards were not applied. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). However, reversal is not warranted even if the court itself would have reached a result contrary to that of the factfinder. *See Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991). A reviewing court

2

may not look only to those parts of the record which support the decision of the ALJ, but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings.  . . .  No similar presumption of validity attaches to the [Commissioner's] legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987) (citations omitted and bracketed material added).

> To be entitled to supplemental security income, a person must be unable to
>
> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.

42 U.S.C. § 1382c(a)(3(A).[3] To make this determination, the Commissioner employs a five-step, sequential evaluation process. *See* 20 C.F.R. §§ 404.1520; 416.920.

> (1) Is the person presently unemployed?
>
> (2) Is the person's impairment severe?
>
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1 [the Listing of Impairments]?
>
> (4) Is the person unable to perform his or her former occupation?
>
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of "not disabled."

---

[3] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 1382c(a)(3)(D).

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[4]

The burden of proof rests on the claimant through step four. *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004); *see also Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). A claimant establishes a *prima facie* case of qualifying disability once he or she has carried the burden of proof from step one through step four. At step five, the burden shifts to the Commissioner, who must then show that there are a significant number of jobs in the national economy that the claimant can perform. *Id*.

To evaluate the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity ("RFC"). *Phillips*, 357 F.3d at 1238-39. The RFC is what the claimant is still able to do despite the claimant's impairments and is based on all relevant medical and other evidence. *Id*. It may contain both exertional and nonexertional limitations. *Id*. at 1242-43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy that the claimant can perform. *Id*. at 1239. To do this, the ALJ can use either the Medical Vocational Guidelines ("grids"), *see* 20 C.F.R. pt. 404 subpt. P, app. 2, or call a vocational expert ("VE"). *Id*. at 1239-40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. Each factor can independently limit the number of jobs realistically available to an individual. *Id*. 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id*.

---

[4] *McDaniel* is a supplemental security income (SSI) case. The same sequence applies to disability insurance benefits brought under Title II of the Social Security Act. Supplemental security income cases arising under Title XVI of the Social Security Act are appropriately cited as authority in Title II cases, and vice versa. *See, e.g., Ware v. Schweiker*, 651 F.2d 408, 412 (5th Cir. 1981); *Smith v. Comm'r of Soc. Sec.*, 486 F. App'x 874, 876 n.* (11th Cir. 2012) ("The definition of disability and the test used to determine whether a person has a disability is the same for claims seeking disability insurance benefits or supplemental security income.").

### III.   ADMINISTRATIVE PROCEEDINGS

Plaintiff was 44 years old at the time she filed her applications for benefits and 45 years old at the time of the ALJ's decision. (Tr. 37, 551). Plaintiff is a resident of Andalusia, Alabama, and lives in a house with her sister, brother, and her 21-year-old son. (Doc. 1; Tr. 74, 76). Plaintiff has a high school education. (Tr. 37, 77).

Plaintiff claims that her ability to work is limited by headaches, memory loss, frustration, nerve damage, degenerative joint disease, carpal tunnel, neuropathy, sleep apnea, mini strokes, and panic attacks. (Tr. 262-63). Plaintiff previously worked as a fast-food restaurant worker, a housekeeper, and a soil sorter. (Tr. 79-82, 532).

Following the administrative hearing, at which Plaintiff and a vocational expert testified, and employing the five-step process, the ALJ made the following enumerated findings:

1. The claimant has not engaged in substantial gainful activity since October 23, 2018, the application date (20 CFR 416.971 *et seq.*).

2. The claimant has the following severe impairments: degenerative disc disease of the cervical and lumbar spine, polyneuropathy, bilateral carpal tunnel syndrome, migraines, hallux valgus of the bilateral feet, chronic renal disease, transient ischemic attack, obesity, borderline intellectual functioning, generalized anxiety disorder ("GAD") and major depressive disorder ("MDD") (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. The claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) except after 30 minutes of sitting; the claimant would need to stand for a minute or two, without going off-task or leaving the workstation. The claimant can only frequently reach overhead and in all other directions, and frequently handle and finger. The claimant can occasionally climb ramps and stairs, but cannot climb ladders, ropes or scaffolds. The claimant can occasionally balance, stoop, kneel, crouch or crawl. The claimant cannot work at unprotected heights, and cannot be exposed to dangerous, moving, mechanical parts. The claimant can only

have occasional exposure to vibration and bright light, such as sunlight. The claimant is limited to simple, routine and repetitive tasks, and simple work-related decisions, and occasional changes in the work setting. The claimant can have only occasional interaction with supervisors, coworkers and the public. The claimant would be off-task 10 percent of the time, in addition to normal breaks, in an eight-hour workday.

5.   The claimant is unable to perform any past relevant work (20 CFR 416.965).

6.   The claimant was born on March 10, 1974 and was 44 years old, which is defined as a younger individual age 18-44, on the date the application was filed (20 CFR 416.963).

7.   The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).

8.   Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

9.   Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969a).

10.  The claimant has not been under a disability, as defined in the Social Security Act, since October 23, 2018, the date the application was filed (20 CFR 416.920(g)).

(Tr. 26, 29-30, 36, 37, 38).

## IV.   ISSUES ON APPEAL

On appeal, Plaintiff argues that the ALJ failed to evaluate properly the medical opinion evidence and failed to develop fully and fairly the medical record in determining her RFC, and that the ALJ failed to evaluate properly her subjective statements. (Doc. 12, at 2). The Commissioner maintains that the ALJ properly evaluated Plaintiff's RFC, that substantial evidence supports the ALJ's RFC determination, and that substantial evidence supports the ALJ's

determination that Plaintiff's statements regarding her symptoms were not entirely consistent with the evidence of record. (Doc. 13, at 6, 13).

## V.     DISCUSSION

### A.     <u>Failure to Evaluate Properly Medical Opinion Evidence and Determine RFC</u>

Plaintiff argues that the ALJ's RFC determination was not supported by any medical evidence from the relevant period at issue—i.e., her most recent SSI application on October 23, 2018—and that *res judicata* precluded the ALJ from reconsidering her disability claims on the merits prior to November 14, 2017.[5] (Doc. 12, at 3). Specifically, Plaintiff argues that the ALJ erred by relying on the medical opinions of Dr. Millard McWhorter from 2013 and Dr. Amy Kayl from 2015, given that her current claim concerns the issue of Plaintiff's disability since October 2018, with *res judicata* precluding adjudication of the period before November 15, 2017. *Id*. Plaintiff further argues that, because the ALJ rejected the only medical opinions on Plaintiff's functioning that related to the period at issue—leaving a gap in the record concerning Plaintiff's ability to engage in exertional activities—the ALJ impermissibly relied on the ALJ's own lay interpretation of the clinical evidence instead of requesting a new evaluation from an examining consultant or taking medical expert testimony from an appropriate specialist regarding Plaintiff's functioning. *Id*. at 4-6. Lastly, Plaintiff argues that the ALJ failed to determine properly Plaintiff's mental RFC (1) by considering medical opinions that were provided in 2011, 2013, and 2015, (2)

---

[5] SSI benefits are limited to the date the claim is filed. 20 C.F.R. § 416.335 ("When you file an application in the month that you meet all the other requirements for eligibility, the earliest month for which we can pay you benefits is the month following the month you filed the application."); 20 C.F.R. § 416.501 ("Payment of benefits may not be made for any period that precedes the first month following the date on which an application is filed or, if later, the first month following the date all conditions for eligibility are met."). Thus, the relevant period for Plaintiff's SSI claim began on October 23, 2018, when she filed her application. *Russell v. Astrue*, 742 F. Supp. 2d 1355, 1358 n.2 (N.D. Ga. 2010). Plaintiff previously filed applications for SSI benefits on April 4, 2012 and again on August 21, 2015, both of which were denied on October 18, 2013 and November 13, 2017, respectively. (Tr. 146-59, 217-32).

by relying on the non-examining state agency psychologist who reviewed a limited medical record when subsequent records documented deterioration of Plaintiff's functioning, and (3) by not requesting a psychological consultative examination or at least testimony from a relevant medical expert on her mental functioning during the period at issue. *Id*. at 6-9.

The Commissioner contends that Plaintiff fails to show that she met her burden of providing evidence that she was disabled, that the record contained evidentiary gaps that resulted in unfairness or clear prejudice, and that the ALJ needed additional information to make an informed decision. (Doc. 13, at 6).

As an initial matter, the ALJ did not err in considering opinions pre-dating the filing of Plaintiff's SSI application in this action. There is no blanket prohibition against an ALJ's considering medical evidence that predates the alleged onset date. "As a general matter, '[m]edical opinions that predate the alleged onset of disability are of limited relevance.' However, they may be of *some* relevance in some cases: for example, when they relate to the conditions a claimant claims are disabling." *Jones v. Comm'r of Soc. Sec.*, No. 3:16-CV-00671, 2017 WL 4125757, at *6 (N.D. Ala. Sept. 18, 2017) (quotations omitted) (emphasis in original); *see id.* ("In this case, Jones offers no authority for the proposition that considering such evidence automatically requires reversal, nor would it be appropriate in this case to do so given the evidence considered by the ALJ tracked the progress of Jones's diabetes and relationship with Dr. Fabianke."); *Hamlin v. Astrue*, No. 3:07-CV-507, 2008 WL 4371326, at *4 (M.D. Fla. Sept. 19, 2008) ("Although here the medical records covered a period of time prior to Plaintiff's alleged onset date, the records do concern many of the same impairments Plaintiff claims as a basis for disability."); *Ulee v. Kijakazi*, No. 4:20CV137, 2021 WL 4480620, at *3 (N.D. Fla. Sept. 30, 2021). An ALJ must consider "all evidence in [a claimant's] case record when [the Commissioner] make[s] a determination or decision" as to whether the claimant is disabled. 20 C.F.R. § 416.920(a)(3). "Such evidence

8

includes evidence that pre- or post-dates the relevant time period." *Rodriguez v. Comm'r of Soc. Sec.*, No. 6:20-CV-1368, 2022 WL 35306, at *4 (M.D. Fla. Jan. 4, 2022) (citation omitted); *Hearn v. Berryhill*, No. 4:15-CV-2001, 2017 WL 4354888, at *5 (N.D. Ala. Sept. 30, 2017) ("[T]he ALJ erred in concluding that he could not consider a medical opinion or medical records that predate an application date (or protective filing date). . . . [O]pinion evidence that predates an alleged onset date may be relevant to a determination of disability.") (citations omitted) (citing *Douglas v. Comm'r of Soc. Sec.*, 486 F. App'x 72, 75 (11th Cir. 2012) (where the Eleventh Circuit found that the ALJ properly "considered evidence from before and after the relevant period that would have bearing on [the claimant's] disability during the relevant time" in determining that the claimant was not disabled.)).

"Courts within the Eleventh Circuit have found pre-onset date evidence to be significant so long as such evidence is: 1) within close proximity to the onset date; and 2) relevant to a claimant's impairments." *Garrett v. Comm'r of Soc. Sec.*, 6:16-cv-1516, 2017 WL 1460733, at *3 (M.D. Fla. Mar. 15, 2017), *report and recommendation adopted*, 2017 WL 1438321 (Apr. 24, 2017). "Moreover, even when an opinion significantly predates a claimant's alleged onset date such that the opinion is of limited relevance, courts in this Circuit have required the ALJ to weigh the opinion." *Nichols v. Comm'r of Soc. Sec.*, No. 6:16-CV-1819, 2018 WL 746940, at *3 (M.D. Fla. Feb. 7, 2018) (citing *Simpson v. Colvin*, No. 2:14-CV-00946, 2015 WL 139329, at *4 (N.D. Ala. Jan. 12, 2015) (finding that the ALJ's failure to weigh an opinion that predated the alleged onset date by two-and-a-half years was not harmless because finding that the error was harmless would have required the court to reweigh the evidence)); *Proulx v. Saul*, No. 3:19-CV-1302, 2021 WL 941371, at *7 (M.D. Fla. Mar. 12, 2021). Further, "[w]hen evaluating a pending claim for benefits, an ALJ may consider evidence that was part of the administrative record for a prior application without reopening the prior decision and running afoul of the concept of administrative

9

*res judicata*." *Hearn*, 2017 WL 4354888, at *5. "Administrative *res judicata* applies when the agency has made a 'previous determination or decision . . . about [a claimant's] rights on the same facts and on the same issue or issues, and this previous determination or decision [had] become final by either administrative or judicial action.'" *McKinzie v. Comm'r of Soc. Sec.*, 362 F. App'x 71, 73 (11th Cir. 2010) (citation omitted). "[T]he Eleventh Circuit has held that *res judicata* does not attach to cases where 'the factual time period for [the claimant's] current application is different from [the] previous application.'" *Griffin v. Astrue*, No. 8:11-CV-1524, 2012 WL 3151569, at *8 (M.D. Fla. Aug. 2, 2012), *aff'd sub nom. Griffin v. Comm'r of Soc. Sec.*, 560 F. App'x 837 (11th Cir. 2014) (citation omitted); *Powell v. Astrue*, No. 1:12CV02, 2012 WL 5467534, at *3 (M.D. Ala. Nov. 9, 2012) ("In the context of a Social Security application, administrative *res judicata* only applies when the time periods at issue have been adjudicated. When an application for benefits involves an unadjudicated time period, *res judicata* will not apply, and the ALJ is not required to give preclusive effect to a prior RFC finding."); *Hearn*, 2017 WL 4354888, at *5 ("An ALJ may use evidence contained in a prior administrative record to identify 'preliminary facts required to assess rationally the question at issue, i.e., whether [the claimant] was disabled at the time of the second application.'") (citation omitted).

Additionally, "[d]icta from an unpublished Eleventh Circuit opinion indicates that an ALJ is not required to consider evidence that was part of the administrative record for a previous disability application." *Caudle v. Berryhill*, No. 5:16-CV-0472, 2017 WL 4340445, at *4 (N.D. Ala. Sept. 29, 2017) (citing *Luckey v. Astrue*, 331 F. A'ppx 634, 640 n. 1 (11th Cir. 2007) ("We recognize the force of the argument that the ALJ was not required to consider [Dr.] Oatley's diagnoses because they pertained only to Luckey's previous disability application."). Consequently, "[u]nder the *Luckey* dicta, an ALJ seems to have discretion to decide whether to consider medical evidence that was part of a prior administrative record." *Id*. at *4.

As to the medical opinions of Dr. McWhorter from 2013 and Dr. Kayl from 2015 regarding

Plaintiff's physical functioning, the ALJ found the following:

> However, the undersigned finds the opinion of Dr. Milliard McWhorter somewhat persuasive. In February 2013, Dr. Milliard McWhorter III found the claimant can occasionally lift up to ten pounds, walk for ten to 15 minutes in an eight-hour workday, can occasionally reach, handle, finger, feel, push and pull; can operate foot controls and balance, but can never climb ramps and stairs, ladders ropes or scaffolds, stoop, kneel, crouch or crawl, and should have no exposure to environmental limitations. (C13F) The opinion that the claimant can only occasionally lift up to ten pounds is supported by the clinical finding that the claimant has joint pain in multiple sits of her body, chronic back pain, migraine headaches, carpal tunnel syndrome, and peripheral neuropathy. (C13F/1) It is consistent with the October 2015 physical exam noting the claimant's range of motion was decreased in her cervical and lumbar spines and shoulders. (C24F/6-7) However, the opinion that the claimant needs a cane to walk is not supported by the consultative exam in June 2011 noting the claimant ambulated with a normal gait upon leaving the office, or the February 2019 exam noting the claimant walked with only a slight limp, and could perform squatting. (C39F/3)
>
> Similarly, the opinion of Dr. Amy Kayl is persuasive. In October 2015, the physical consultative examiner Dr. Amy Kayl determined that the claimant has a limitation in standing, and being able to stand continuously in an eight-hour workday; has limitations in her ability to bend or stoop; that the claimant can only lift and carry five to ten pounds on a continuous basis. (C24F/8) This opinion is supported by the exam showing the claimant had difficulty bending over and touching her toes, and the claimant wore a neck brace, made from a towel at home, and a back brace. (C24F/6) It is supported by the claimant's decreased range of motion in the cervical and lumbar spine. (C24F/5) It is consistent with nerve conduction studies in July 2013 noting sensory motor polyneuropathy. (C15F/2)

(Tr. 34-35).

As to the medical opinions on Plaintiff's physical functioning that post-date her October

23, 2018 SSI application, the ALJ found the following:

> [I]n February 2019, the opinion of the physical consultative Dr. Caleb Yongkuma changed to less restrictive limitations. In February 2019, Dr. Yongkuma found no specific restrictions or limitations for sitting, standing, lifting, handling objects, reading, speaking, writing or hearing. (C39F/4) This opinion is not supported by the exam showing decreased strength in the hands bilaterally and a decreased range of motion of the back. (C39F/4) It is not supported by the exam showing the claimant was walking with a slight limp. (C39F/3) It is not consistent with the nerve conduction studies in June 2012 showing sensory neuropathy of the legs. (C39F/4) Because of these inconsistences, the opinion of Dr. Caleb Yongkuma is less persuasive.

11

. . . .

[T]he undersigned finds the opinion of the state agency physical consultant less persuasive. In February 2019, the state agency physical consultant Dr. Alton James opined that the claimant can occasionally lift 20 pounds, and frequently lift or carry 10 pounds; that the claimant can sit, stand or walk for six hours in an eight-hour workday; has limited push or pulling in the upper and lower extremities bilaterally; can occasionally climb ramps and stairs, and climb ladders, ropes or scaffolds; can occasionally stoop, kneel, crouch but cannot crawl; can frequently handle and finger in both arms; and should avoid even moderate exposure to hazards such as unprotected heights, free standing water and commercial driving. (C10A/12-14) The opinion that the claimant can lift up to 20 pounds occasionally is not consistent with the record in May 2015 of a whole body scan finding degenerative activity involving mostly large joints in the shoulders and the spine. (C23F/26) It is not consistent with nerve conductions studies in August 2012 reporting bilateral carpal tunnel syndrome, right worse than left. (C10F/9)

(Tr.34, 35).

As to the mental health opinions, the ALJ found the following:

In terms of mental health opinions, the opinion of the mental consultative examiner Dr. Randall Green is somewhat persuasive. In June 2011, the psychological consultative examiner Dr. Randall Green determined that the claimant's ability to carry out and remember instructions of a simple, one-step nature is not compromised, though multi-steps tasks require some degree of supervision. (C1F/4) He found the claimant's ability to respond well to coworkers, supervision, and everyday work pressures is compromised mildly. (C1F/4) The opinion that the claimant's ability to carry out and remember instructions of a simple and one-step nature is supported by the exam indicating that the claimant could do serial 3s, and spell the word "gold" backwards. (C1F/3) However, the opinion that the claimant's ability to respond well to work pressures is only mildly compromised is not consistent with the claimant's record that she was arrested in the past, but is evasive on the timeline or the reason. (C1F/3) Her affect was somewhat restricted, and her fund of information was below average. (C1F/3)

The opinion of the state agency mental consultants is persuasive, however. In June 2012 and February 2019, the state agency mental consultants Dr. Donald Hinton and Dr. Harold Veits indicated that the claimant can attend and concentrate for two-hour periods, and has the ability to understand, remember, and carry out short and simple instructions. (C1A/7-9; C10A/13-16) This opinion is consistent with the claimant's limited fund of information, and being unable to interpret abstract phrases. (C26F/3) It is consistent with the exam showing the claimant's level of functioning to be at the borderline range of intelligence, with poor insight and judgment. (C26F/3)

The opinion of Dr. Milliard McWhorter is somewhat persuasive as well. In

February 2013, Dr. Milliard McWhorter found the claimant had marked limitations in interacting appropriately with the public or supervisors, and carrying out complex instructions. (C12F) Marked limitations in interacting appropriately is not consistent with the November 2015 exam noting that the claimant was motivated and cooperative with the examiner. (C26F/4) She appeared normal and appropriate for her age. (C26F/3) However, the claimant also appeared restless with standing and pacing, and she reported feeling depressed with a restricted affect. (C26F/3) A physical exam in October 2015 also noted the claimant was evasive and did not cooperate. (C26F/7)

The opinion of the consultative psychologist Dr. Fernelle Warren is persuasive. In November 2015, the consultative psychologist Dr. Fernelle Warren opined that the claimant's ability to function independently is moderately to markedly impaired; her ability to remember and carry out instructions is mildly to moderately impaired, and her ability to respond appropriately to supervisors, coworkers, and work pressures in a work setting is moderately to markedly impaired. (C26F/4) This is supported by the exam showing the claimant's motor activity was restless, with a tense gait, restricted affect and depressed mood. (C26F/3) It is supported by the exam noting the claimant was unable to recall three objects after a minute delay with interference. (C26F/3) It is consistent with the June 2011 exam noting her intelligence was estimated to be in the low average range. (C1F/3)

Finally, the opinion of the state agency mental consultant is less persuasive. In November 2015, the state agency mental consultant Dr. Peter Sims determined that the claimant's final mental impairments were less than severe. (C7A/22) It is not consistent with the exam showing the claimant's level of functioning to be at the borderline range of intelligence, with poor insight and judgment. (C26F/3) It is not consistent with the November 2015 record indicating the claimant's responses to mathematical and serial tasks, memory functions, fund of information, and ability to think in abstract terms appeared to be consistent with a level of functioning estimated to be in the borderline range of intelligence. (C26F/3)

(Tr. 35-36).

Plaintiff complains that the ALJ rejected the "only" medical opinions on Plaintiff's physical and mental functioning that related to the period from Plaintiff's application date through the date of the ALJ's decision, which left "a significant gap in the record concerning Plaintiff's ability to engage in exertional activities that she could not fill based on [the ALJ's] own lay interpretation of the evidence, and argues that the "ALJ should have further developed the record by requesting medical opinion(s) on Ms. Taylor's physical [and mental] functioning, there being none available concerning Plaintiff's ability to work since October 2018 that the ALJ found

credible." (Doc. 12, at 4, 6-7).

An RFC determination is an assessment of what a claimant is still able to do despite the claimant's impairments and is based on all relevant medical and other evidence. *Phillips*, 357 F.3d at 1238-39; *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir.1997); 20 C.F.R. §§ 404.1545(a), 416.945(a). "There is no rigid requirement that the ALJ specifically refer to every piece of evidence, so long as the ALJ's decision is not a broad rejection, i.e., where the ALJ does not provide enough reasoning for a reviewing court to conclude that the ALJ considered the claimant's medical condition as a whole." *Packer v. Comm'r, Soc. Sec. Admin.*, 542 F. App'x 890, 891-92 (11th Cir. 2013).

"[T]he task of determining a claimant's [RFC] and ability to work rests with the [ALJ], not a doctor." *Moore v. Soc. Sec. Admin., Comm'r*, 649 F. App'x 941, 945 (11th Cir. 2016). An ALJ "is under no obligation to obtain or adopt a medical source statement's findings as [the ALJ's] RFC finding." *Smith v. Comm'r, Soc. Sec. Admin.*, No. 2:15-CV-00964, 2017 WL 167322, at *6 (N.D. Ala. Jan. 17, 2017); *Rodriguez v. Comm'r of Soc. Sec.*, No. 618CV503, 2018 WL 7113871, at *2 (M.D. Fla. Dec. 27, 2018), *report and recommendation adopted*, No. 618CV503, 2019 WL 316051 (M.D. Fla. Jan. 24, 2019) ("[T]here is no requirement that an ALJ base an RFC finding on a medical source's opinion."). "To find that an ALJ's RFC determination is supported by substantial evidence, it must be shown that the ALJ has 'provide[d] a sufficient rationale to link' substantial record evidence 'to the legal conclusions reached.'" *Eaton v. Colvin*, 180 F. Supp. 3d 1037, 1055 (S.D. Ala. 2016) (citations omitted); *Green v. Soc. Sec. Admin.*, 223 F. App'x 915, 924 (11th Cir. 2007) ("The ALJ did not substitute his judgment for that of Dr. Bryant; rather, he determined that Dr. Bryant's opinion was inconsistent with objective medical evidence in the record."). "[T]o find that the ALJ's RFC assessment is supported by substantial evidence, it is not necessary for the ALJ's assessment to be supported by the assessment of an examining or treating

physician." *Id*. at 1055-56. An ALJ "is not required to specifically address every aspect of an opinion or every piece of evidence in the record." *Coley v. Comm'r of Soc. Sec.*, 771 F. App'x 913, 917 (11th Cir. 2019); *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) ("[T]here is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision . . . is not a broad rejection which is 'not enough to enable [the district court . . .] to conclude that [the ALJ] considered [the claimant's] medical condition as a whole.'") (citation omitted).

"[A] hearing before an ALJ is not an adversary proceeding," and "the ALJ has a basic obligation to develop a full and fair record." *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997).[6] "Nevertheless, the claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim." *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003); *see* 20 C.F.R. § 416.912(a) (stating that "you have to prove to us that you are . . . disabled. You must inform us about or submit all evidence known to you that relates to whether or not you are . . . disabled . . . . This duty is ongoing and requires you to disclose any additional related evidence about which you become aware."). "There must be a showing that the ALJ's failure to develop the record led to evidentiary gaps in the record, which resulted in unfairness or clear prejudice, before the court will remand a case for further development of the record." *Rodriguez-Torres v. Saul*, No. 8:18-CV-1982, 2019 WL 4267955, at *4 (M.D. Fla. Sept. 10, 2019), *aff'd sub nom. Torres v. Comm'r of Soc. Sec.*, 819 F. App'x 886 (11th Cir. 2020). "At a minimum, clear prejudice 'requires a showing that the ALJ did not have

---

[6] "The basic duty to develop the record rises to a 'special duty' where the claimant has not waived his or her right to representation and is not represented during the administrative proceedings." *Rivera Perez v. Comm'r of Soc. Sec.*, No. 6:20-CV-79, 2021 WL 289052, at *2 n.3 (M.D. Fla. Jan. 28, 2021) (citing *Brown v. Shalala*, 44 F.3d 931, 934-35 (11th Cir. 1995)). Here, Plaintiff was represented during the administrative proceedings. (Tr. 67-102). Thus, the ALJ had only a basic duty to develop the record.

all of the relevant evidence before him in the record . . . or that the ALJ did not consider all of the evidence in the record in reaching his decision.'" *Rivera Perez v. Comm'r of Soc. Sec.*, No. 6:20-CV-79, 2021 WL 289052, at *3 (M.D. Fla. Jan. 28, 2021) (quoting *Kelly v. Heckler*, 761 F.2d 1538, 1540 (11th Cir. 1985)).

Here, the evidence before the ALJ was sufficient for the ALJ to assess Plaintiff's RFC. The ALJ properly considered and weighed the medical opinions that pre- and post-dated Plaintiff's application, and such consideration did not create an evidentiary gap that caused prejudice. Plaintiff does not assert any specific challenges to the medical opinions themselves or cite to any inconsistencies between the opinions and any other medical evidence. Nor does Plaintiff allege that any other medical records existed that the ALJ could have obtained that would have made any difference in the outcome of her case. "To the extent Plaintiff disagrees with the ALJ's interpretation of that evidence, that is not a ground for remand." *Horne v. Comm'r of Soc. Sec.*, No. 2:20-CV-181-JLB-MRM, 2021 WL 3023679, at *5 (M.D. Fla. June 28, 2021), *report and recommendation adopted*, No. 2:20-CV-181-JLB-MRM, 2021 WL 3022727 (M.D. Fla. July 16, 2021) (citing *Sarria v. Comm'r of Soc. Sec.*, 579 F. App'x 722, 724 (11th Cir. 2014)); *Lanier v. Colvin*, No. CV414-004, 2015 WL 3622619, at *1 (S.D. Ga. June 9, 2015) ("The fact that Plaintiff disagrees with the ALJ's decision, or that there is other evidence in the record that weighs against the ALJ's decision, does not mean that the decision is unsupported by substantial evidence.") (citing *Crawford*, 363 F.3d at 1158-59).

Plaintiff attempts to demonstrate prejudice by arguing that the ALJ should have sought additional medical opinion evidence or ordered another consultative examination, despite Plaintiff's undergoing a physical consultative examination in February 2019 (Tr. 1346-1349). As stated previously, an ALJ's RFC determination is not required to be based upon a doctor's opinion. *Moore*, 649 F. App'x at 945; *Smith*, 2017 WL 167322, at *6; *Rodriguez,* 2018 WL 7113871, at *2;

*Eaton*, 180 F. Supp. 3d at 1055-56. The "[o]rdering [of] a consultative examination is a discretionary matter for the ALJ and would be sought 'to try to resolve an inconsistency in the evidence or when the evidence as a whole is insufficient to support a determination or decision' on the claim." *Banks for Hunter v. Comm'r, Soc. Sec. Admin.*, 686 F. App'x 706, 713 (11th Cir. 2017) (quoting 20 C.F.R. § 416.919a(b)). Here, the ALJ did, in fact, order a physical consultative examination, which Plaintiff underwent in February 2019. (Tr. 1346-1349). Dr. Caleb Yongkuma found that Plaintiff's physical examination and range of motion evaluation were unremarkable, and concluded that Plaintiff had no specific restrictions or limitations, including sitting, standing, lifting, handling objects, reading, speaking, writing or hearing. (Tr. 1349). The ALJ found Dr. Yongkuma's opinion was "less persuasive," stating the following:

> This opinion is not supported by the exam showing decreased strength in the hands bilaterally and a decreased range of motion of the back. (C39F/4) It is not supported by the exam showing the claimant was walking with a slight limp. (C39F/3) It is not consistent with the nerve conduction studies in June 2012 showing sensory neuropathy of the legs. (C39F/4) Because of these inconsistences, the opinion of Dr. Caleb Yongkuma is less persuasive.

(Tr. 34).

Although Plaintiff may disagree with the consultative examiner's opinion, she is not entitled to a "do-over" until she gets one that she likes. "A claimant cannot show prejudice by speculating that she would have benefitted from a more comprehensive hearing." *McCabe v. Comm'r of Soc. Sec.*, 661 F. App'x 596, 599 (11th Cir. 2016). At the hearing, Plaintiff had the burden to prove that she was disabled and entitled to receive Social Security benefits. *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). "The ALJ 'has a duty to develop the record where appropriate but is not required to order a consultative examination as long as the record contains sufficient evidence for the [ALJ] to make an informed decision.'" *Castle v. Colvin*, 557 F. App'x 849, 853 (11th Cir. 2014) (citation omitted).

The medical record before the ALJ included updated treatment records for both Plaintiff's

mental and physical conditions (Tr. 1271-1430); the consultative examination report and opinion from Dr. Yongkuma (Tr. 1346-1349); the prior administrative medical findings of the State agency medical and psychiatric consultants (Tr. 262-280); Plaintiff's disability reports (Tr. 519-559, 588-595); and Plaintiff's hearing testimony (Tr. 74-92). Although the ALJ declined to find some of the prior administrative medical findings or Dr. Yongkuma's opinion to be fully persuasive, Plaintiff does not cite to specific findings or opinions demonstrating that Plaintiff had additional limitations beyond those the ALJ assessed. In fact, the ALJ's determination that this evidence was not completely persuasive benefited Plaintiff, as the ALJ assessed more limitations than others did. (Tr. 29-30, 33-34). The ALJ also considered that the new evidence demonstrated that Plaintiff's condition had "worsened in the elapsed time from the date of the unfavorable decisions to the filing date of the subsequent application for disability," and, as a result, imposed additional limitations. (Tr. 29-30, 33-34, 151-52, 226).

Plaintiff next argues that, in determining Plaintiff's mental RFC, the ALJ improperly relied on the opinion of a non-examining state agency psychologist, Harold Veits, M.D., who only considered approximately three months of records—from October 2018 to January 29, 2019—but did not review the treatment records produced after he issued his opinion. (Doc. 12, at 7). Plaintiff also maintains that the ALJ did not evaluate Dr. Veits's prior administrative medical findings in light of the updated treatment notes. *Id*. at 7-8. Plaintiff contends that because the record does not contain any opinions from an examining source regarding Plaintiff's mental functioning during the period at issue, the ALJ should have requested a psychological consultative examination or at least testimony from a relevant medical expert on the subject. *Id*. at 8. Plaintiff asserts that the record shows that mental examinations from February 12, 2019 to October 2019 reflect that Plaintiff experienced sleep disturbances, easy distractibility, fair insight and judgment, fair appetite, irritability, lethargy, and depressed mood. *Id*. at 7-8; Tr. 1361, 1363-65, 1369, 1372-73,

1378, 1428-30.

However, the ALJ was not confined to considering only Dr. Veits' opinion. The ALJ also considered the medical records post-dating Dr. Veits' opinion. The ALJ considered Plaintiff's testimony at the hearing that she had "difficulty understanding, remembering and reading information"; that she felt "overwhelmed and angry, and socially isolated"; that her pain affected "her ability to concentrate and focus" and that she "reported a history of seeking treatment for an altered mental status and confusion"; and that a case worker "takes her shopping for groceries once a month." (Tr. 28-29). Elsewhere in the ALJ's decision, the ALJ noted that "[i]n December 2018, the claimant reported symptoms of tearfulness, sadness, depression and having no interests"; that "[s]he was diagnosed with Major Depressive Disorder"; and that "[i]n February 2019, the claimant sought treatment for depression, having no interests and deriving no pleasure from any activities" and "she reported trauma from sexual abuse as a child." (Tr. 32, 1336-37). The ALJ concluded, "Because of the claimant's severe mental health impairments, she is limited to simple and routine tasks, simple work-related decisions, and occasional changes in the work setting." (Tr. 32). The ALJ also considered medical records, stating that "[i]n September 2019, the claimant reported doing well on current psychotropic medications, denying any side effects, and reporting improved symptoms, rating her depression a three out of ten in severity, and endorsed adequate energy levels." (Tr. 32-33, 1352). The ALJ further considered that "[i]n October 2019, the claimant reported confusion, stating she did not know where she was or who any of the people around her were; however, when questioned about her medications, she angrily reminded the provider the last time she was in the hospital that she was out of her medications." (Tr. 33, 1403).

Here, the record as a whole is neither incomplete nor inadequate. Instead, the record was sufficient for the ALJ to evaluate Plaintiff's impairments and functional ability, and it does not show the kind of gaps in the evidence necessary to demonstrate prejudice. *Dyer v. Barnhart*, 395

F.3d 1206, 1210 (11th Cir. 2005) ("'If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it.' 'We may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]'") (citation omitted).

## B.     <u>Failure to Evaluate Properly Plaintiff's Subjective Statements</u>

Plaintiff contends that the ALJ's evaluation of Plaintiff's subjective statements largely focused on records that predated October 23, 2018 and that, other than the ALJ's conclusory or "boilerplate" finding that Plaintiff's allegations were not supported by the evidence, the ALJ made no findings regarding her subjective statements relating to her physical impairments. (Doc. 12, at 12). Plaintiff also argues that Plaintiff gave insufficient reasons for discounting Plaintiff's statements regarding her mental impairments from the relevant period. *Id*. at 13. The Commissioner argues that, consistent with the regulations, the ALJ properly determined that Plaintiff's statements regarding the intensity, persistence, and the functionally limiting effects of her alleged symptoms were not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in the ALJ's decision, and that substantial evidence supports this determination. (Doc. 13, at 13).

In determining whether a claimant is disabled, the claimant's symptoms, including pain, are considered to the extent that they are reasonably consistent with objective medical evidence and other evidence. 20 C.F.R. §§ 404.1529(a), 416.929(a). However, a claimant's statements about pain or symptoms alone are not enough to establish the existence of a physical or mental impairment or disability. *Id*.; SSR 16-3p, 2017 WL 5180304, at *2 (S.S.A. Oct. 25, 2017); *Wimberley v. Berryhill*, No. CV 17-00558, 2019 WL 1418056, at *13 (S.D. Ala. Mar. 29, 2019) ("The ALJ is not required to accept a claimant's allegations of pain or other symptoms."). The regulations set out a two-step process for the evaluation of subjective complaints, such as pain. *Id*.;

SSR 16-3p, 2017 WL 5180304, at *3. To establish a disability based on testimony of pain and other symptoms, the claimant must provide evidence of an underlying medical condition and either (1) objective medical evidence confirming the severity of the alleged symptoms or pain, or (2) evidence establishing that the objectively determined medical condition could be reasonably expected to give rise to the alleged symptoms or pain. *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002); 20 C.F.R. §§ 404.1529(a)-(b), 416.929(a)-(b); SSR 16-3p, 2017 WL 5180304, at *3. "Consideration of a claimant's symptoms thus involves a two-step process, wherein the Commissioner first considers whether an underlying medically determinable physical or mental impairment exists that could reasonably be expected to produce the claimant's symptoms, such as pain." *Denny v. Kijakazi*, No. 8:20-CV-1573, 2022 WL 831901, at *7 (M.D. Fla. Mar. 21, 2022); 20 C.F.R. §§ 404.1529(a)-(b), 416.929(a)-(b); SSR 16-3p, 2017 WL 5180304, at *3.

Once an underlying physical or mental impairment that could reasonably be expected to produce the claimant's symptoms, such as pain, is established, the ALJ must then consider all of the evidence in the record to evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit the claimant's capacity for work. SSR 16-3p, 2017 WL 5180304, at *3-4; 20 C.F.R. §§ 404.1529(a)-(b), 416.929(a)-(b); *Lopez v. Comm'r of Soc. Sec. Admin.*, No. 6:19-CV-00986, 2020 WL 6203876, at *6 (N.D. Ala. Oct. 22, 2020). In doing so, SSR 16-3p and the regulations require an ALJ to consider certain factors, including: (1) daily activities; (2) location, duration, frequency, and intensity of pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken; (5) treatment, other than medication, to relieve pain or other symptoms; (6) any measures used to relieve pain or other symptoms; and (7) any other factors concerning functional limitations and restrictions due to pain or other symptoms. SSR 16-3p, 2017 WL 5180304, at *8-9. If the ALJ discredits Plaintiff's subjective statements, the ALJ "must articulate explicit and

adequate reasons for doing so." *Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995).

"Subjective complaint credibility is the province of the ALJ." *Williams v. Kijakazi*, No. 2:20-CV-

277, 2022 WL 736260, at *2 (M.D. Ala. Mar. 10, 2022) (citing *Mitchell v. Comm'r, Soc. Sec.*

*Admin.*, 771 F.3d 780, 782 (11th Cir. 2014)).[7]

The ALJ provided a detailed summary of Plaintiff's subjective complaints, as follows:

> The claimant alleged disability based on a number of physical and mental
> impairments. (C2E/2) At the hearing, the claimant testified to suffering from
> multiple neuropathy in both legs, and bilateral carpal tunnel syndrome, with the
> right arm worse than the left. She has degenerative activity in the large joints
> including the shoulder and spine. She also alleged generalized anxiety disorder,
> major depression disorder and borderline intellectual functioning. She described

---

[7] In *Huigens v. Soc. Sec. Admin., Comm'r*, 718 F. App'x 841 (11th Cir. 2017) the Eleventh Circuit
stated:

> SSR 16-3p rescinded the Social Security Administrations prior rule for subjective
> symptom evaluation, SSR 96-7p, to the extent that it "eliminated the use of the term
> 'credibility' in the sub-regulatory policy and stressed that when evaluating a
> claimant's symptoms the adjudicator will 'not assess an individual's overall
> character or truthfulness' but instead 'focus on whether the evidence establishes a
> medically determinable impairment that could reasonably be expected to produce
> the individual's symptoms and given the adjudicator's evaluation of the individual's
> symptoms, whether the intensity and persistence of the symptoms limit the
> individual's ability to perform work-related activities....'"

*Id*. at 848; *Hartley v. Kijakazi*, No. 3:20-CV-1266, 2021 WL 5881671, at *3 (M.D. Fla. Dec. 13,
2021) ("'The change in wording is meant to clarify that [ALJs] aren't in the business of impeaching
claimants' character; obviously [ALJs] will continue to assess the credibility of pain *assertions* by
applicants, especially as such assertions often cannot be either credited or rejected on the basis of
medical evidence.'") (quoting *Cole v. Colvin*, 831 F.3d 411, 412 (7th Cir. 2016) (emphasis in
original)); *Pettigrew v. Berryhill*, No. 1:17-CV-01118, 2018 WL 3104229, at *14 n.14 (N.D. Ohio
June 4, 2018), *report and recommendation adopted*, No. 1:17CV1118, 2018 WL 3093696 (N.D.
Ohio June 22, 2018) ("While the court applies the new SSR, it declines to engage in verbal
gymnastics to avoid the term credibility where usage of the term is most logical. Furthermore,
there is no indication that the voluminous case law discussing and applying the credibility or
symptom analysis governed by SSR 96-7p has been invalidated by SSR 16-3p."); *Cook v. Comm'r
of Soc. Sec.*, No. 1:19-CV-1068, 2020 WL 7253307, at *7 (S.D. Ohio Dec. 10, 2020), *report and
recommendation adopted*, No. 1:19-CV-1068, 2021 WL 22522 (S.D. Ohio Jan. 4, 2021) ("The
elimination of the word 'credibility' from SSR 16-3p is semantically awkward in applying prior
case law, insofar as virtually all of the case law interpreting the former SSR 96-7p uses the
catchphrase 'credibility determination.' Nevertheless, the essence of the regulatory framework
remains unchanged. Therefore, courts agree that the prior case law remains fully applicable to the
renamed 'consistency determination' under SSR 16-3p, with few exceptions.").

symptoms of everyday depression, feeling overwhelmed and easily agitated. She has a case worker who assists her with driving her for shopping. According to the claimant, her medical problems began after slipping on the job and injuring her lower back and head; the claimant was also involved in two motor vehicle incidents. (C27F/2)

(Tr. 30). In evaluating Plaintiff's subjective statements, the ALJ concluded:

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

(Tr. 32).

Although Plaintiff contends that boilerplate language was used in the ALJ's evaluation of Plaintiff's subjective statements, "this is standard language," which "directly addresses the Eleventh Circuit's pain standard; it is not improper on its face if supported by substantial evidence." *Martinez v. Comm'r of Soc. Sec.*, No. 6:18-CV-1339, 2019 WL 13072396, at \*4 (M.D. Fla. July 22, 2019). "[T]here is no requirement that the ALJ explicitly discuss each of the seven factors." *Majkut v. Astrue*, No. 8:07-CV-1828, 2009 WL 860623, at \*14 (M.D. Fla. Mar. 30, 2009), *aff'd sub nom. Majkut v. Comm'r of Soc. Sec.*, 394 F. App'x 660 (11th Cir. 2010)[8]; *Tibbetts v. Comm'r of Soc. Sec.*, No. 2:20-CV-872, 2021 WL 6297530, at \*15 (M.D. Fla. Dec. 21, 2021), *report and recommendation adopted*, No. 2:20-CV-872, 2022 WL 61217 (M.D. Fla. Jan. 6, 2022) ("[W]hen the ALJ conducts the subjective symptom evaluation 'there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision enables the district court to conclude that the ALJ considered [the claimant's] medical condition as a whole.' To be sure, the ALJ was required to consider all of the evidence presented, including

---

[8] Although the court there was referring to the seven factors in SSR 96-7p, those factors are identical to the seven listed in SSR 16-3p. *See* SSR 96-7P, 1996 WL 374186, at \*3 (S.S.A. July 2, 1996).

Plaintiff's own description of her daily activities, *see* 20 C.F.R. § 404.1529(c)(3)[;] however, the ALJ was not required to expressly discuss it.") (citations omitted).

In finding Plaintiff's subjective statements not entirely consistent with the other evidence in the record, the ALJ properly considered the objective clinical findings in physical and mental treatment notes and consultative examinations from both before and after the alleged onset date; the medical opinion evidence and prior administrative medical findings from both before and after the alleged onset date; adult function reports; medical treatment history; the fact that in April 2017 Plaintiff stopped attending mental health treatment because she did not like that providers asked her "the same questions" each time; and that in September 2019 Plaintiff "reported doing well on current psychotropic medications, denying any side effects, and reporting improved symptoms, rating her depression a three out of ten in severity, and endorsed adequate energy levels." (Tr. 28-36, 1352). The ALJ also noted that "[i]n October 2019, the claimant reported confusion, stating she did not know where she was or who any of the people around her were; however, when questioned about her medications, she angrily reminded the provider the last time she was in the hospital that she was out of her medications." (Tr. 33, 1403).

Accordingly, based upon the foregoing, substantial evidence supports the ALJ's determination that Plaintiff's statements regarding her pain and other symptoms were not entirely consistent with the evidence of record. Further, the ALJ adequately articulated reasons for not fully crediting Plaintiff's statements about her pain and other symptoms, which specifically included a discussion of the objective medical evidence that was inconsistent with Plaintiff's testimony about the severity of her alleged symptoms. Thus, the ALJ did not err in evaluating Plaintiff's allegations of pain and other subjective symptoms, and Plaintiff's claim fails. *Glover v. Saul*, No. 3:20-CV-05625, 2021 WL 5033974, at *9-10 (N.D. Fla. Oct. 18, 2021) (citing the ALJ's discussion of the medical record, the court found that the ALJ articulated explicit and adequate reasons for

discrediting plaintiff's testimony); *Wimberley*, 2019 WL 1418056, at *13-14 (same).

**VI.    CONCLUSION**

The court has carefully and independently reviewed the record, and it concludes that, for the reasons given above, the Commissioner's decision is due to be AFFIRMED. A separate judgment will issue.

DONE, on this the 25th day of March, 2022.

/s/ Susan Russ Walker
Susan Russ Walker
United States Magistrate Judge